Terry SCHMANSKI, Appellant,

v.

STATE of Indiana, Appellee.

No. 878S175.

Supreme Court of Indiana.

Feb. 15, 1979.

Paul T. Cholis, South Bend, for appellant.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with first degree murder, Ind. Code § 35–13–4–1 (Burns 1975) and convicted of the lesser included offense of second degree murder in a trial by jury. He was sentenced to imprisonment for a period of not less than fifteen (15) nor more than twenty-five (25) years. On appeal he raises the following as error:

(1) Whether there was sufficient evidence to sustain the verdict on the elements of malice and purpose.

(2) Whether the trial court erred in refusing testimony concerning the existence of a second gun.

(3) Whether the trial court erred in denying the defendant's motion for mistrial.

(4) Whether the trial court erred in sustaining the State's objections to questions concerning the decedent's prior convictions for assault and battery and disorderly conduct.

\* \* \* \* \* \*

## ISSUE I

The evidence most favorable to the State disclosed that during the evening hours of September 9, 1977, the defendant attended a beer drinking party on Pershing Street in South Bend. When the beer ran out at the party, he left, along with Donna Cox and Denny Kroll, stopping at various places to buy alcohol. Sometime after midnight the defendant and Ms. Cox drove past the scene of a second party at the request of Ms. Cox. The defendant was hesitant about stopping at the party, as he did not want to encounter Robert Crawford, the decedent's brother, who Ms. Cox knew would be there. Crawford had previously fought with one of the defendant's friends. Despite the defendant's reservations, they decided to stop at the party. The defendant and Crawford became involved in a conversation, during which time the decedent, Crawford's brother, approached the two, asked the defendant why he was "hassling" Crawford and hit the defendant in the mouth. The defendant stumbled backward, said something to the effect that he was going to kill the decedent, drew a sawed off shotgun that had been concealed in his boot and shot the decedent once, fatally wounding him. He then turned to Crawford and stated that he was going to kill him too, at which point Crawford turned and ran.

The defendant testified at trial that the decedent had aimed a dark colored gun at him prior to the shooting, however, Crawford and Ms. Cox, both witnesses to the shooting, testified that the decedent was unarmed.

The defendant does not espouse the theory of self defense on appeal, as he concedes that the jury could properly have found from the evidence that he was not acting in self defense when he shot the decedent. Rather, he contends that there was insufficient proof that he acted with purpose and malice, inasmuch as the State failed to exclude the hypothesis that he was reacting out of fear and anger, having had no time to coolly reflect upon what he was about to do. As authority for his position, the defendant relies solely on *Shutt v. State,* (1977) Ind., 367 N.E.2d 1376.

At the outset we must first note that, as in any sufficiency determination, we will neither reweigh the evidence nor will we judge the credibility of the witnesses. *Beasley v. State,* (1977) Ind., 370 N.E.2d 360. We will look only to that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom, to determine whether such evidence and inferences would permit a reasonable trier of fact to find the existence of each of

the essential elements of the crime charged beyond a reasonable doubt. If so, the verdict will not be disturbed. *Baum v. State,* (1976) 264 Ind. 421, 345 N.E.2d 831.

The facts in *Shutt* are readily distinguishable from those in the case at bar. There, we found that the inference of malice, which arose only from the defendant's use of a deadly weapon, was rebutted by unrefuted evidence to the contrary.

■ In the instant case, there is a marked absence of the provocative circumstances present in the *Shutt* case, and some inference of malice arose from circumstances other than the use of the weapon. There had been no prior threats of physical harm directed towards the defendant nor had there been any acts other than the assault immediately preceding the shooting, upon which to base a finding of provocation sufficient to give rise to an impassioned mind incapable of cool reflection. On the contrary, the defendant went to the party armed, anticipating the possibility of a fight. After the initial assault, the defendant paused for a moment and stated that he was going to kill the decedent before firing the fatal shot. Much of the evidence tends to support the inference that the defendant acted with purpose and malice.

### ISSUE II

■ During its case in chief, the defense called Diana Cox as a witness, and questioned her concerning a gun that she had seen at the Pershing Street party. She testified that she was shown the gun as she was leaving the party. The State objected to the questioning on the grounds that it was irrelevant, at which time the defense made the following offer to prove:

"Mr. Cholis: If this witness is permitted to testify, she will testify that she saw the gun in the possession of Todd Moss; that he showed it to her after they left the Pershing Street party. I believe she's already testified that after leaving the Pershing Street party they went to the party up north at Buwa's house. I believe that she will further testify she never saw the gun after that time.

"The Court: What does that have to do with it?

"Mr. Cholis: The only connecting link would be that there is a possibility that the gun was given to Gary Crawford and thereby left with somebody at the party.

"The Court: That is the last time she ever saw that thing?

"Mr. Cholis: This is the last time she will testify she will have ever seen it.

"Mr. Barnes: That is pretty thin.

"The Court: That is too far away, unless you are going to connect it up, and I don't know how you can based on what you said.

"Mr. Cholis: That is all I believe this witness is able to testify to.

"The Court: There is nothing that anybody else is going to testify to?

"Mr. Cholis: No."

The State's objection was sustained, however, on cross examination, Ms. Cox testified that she did not see the gun again after leaving Moss' car.

Defendant contends that the trial court erred in refusing to admit testimony which would have shown that the decedent may have had a gun at the time that he assaulted the defendant. Although he concedes that the relevancy is slight, the defendant contends that the evidence should have been admitted since the testimony would have made the defendant's story of having seen a gun, more probable.

Without further testimony connecting the gun to the decedent, we question the relevancy of Ms. Cox's testimony. Regardless of its relevancy, however, we do not see how the defendant was prejudiced by the trial court's ruling, since the only evidence which the defendant sought to have admitted was later admitted during the State's cross examination of the witness. We therefore find no merit in the defendant's argument.

### ISSUE III

State's witness Sergeant Seniff testified that he had interviewed approximately ten

people in connection with the shooting. When asked whether any of those interviewed gave any indication that they saw the decedent with a gun in his possession that night, the defendant objected on grounds that the question sought to elicit inadmissible hearsay. Defense counsel moved for a mistrial, which motion was denied by the trial court on the grounds that the witness had not answered the question. The defendant challenges the trial court's ruling on appeal.

The granting of a mistrial lies largely within the sound discretion of the trial judge, as he is in a better position than a court of review to determine whether any prejudicial error has occurred. *White v. State,* (1971) 257 Ind. 64, 272 N.E.2d 312. His determination will not be overturned unless it can be shown that he has abused this discretion. In determining whether the alleged conduct is sufficiently prejudicial so as to warrant the granting of a mistrial, the judge must decide whether, under all of the circumstances, the defendant has been placed in a position of grave peril to which he should not have been subjected. *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843; *White v. State, supra.*

In the instant case, we fail to see how the defendant was placed in a position of grave peril by the State's question, since the witness never answered the question. We find no error in the trial court's denial of the motion.

### ISSUE IV

The decedent's brother was called as a witness for the State. During cross examination, defense counsel questioned the witness regarding his brother's reputation for peace and quietude, and as to whether to his knowledge the decedent had ever been convicted of assault and battery. The State objected, upon the grounds that, unless the defendant could show that he had knowledge of the decedent's reputation and criminal record prior to the time of the shooting, such evidence would be irrelevant. Defense counsel concedes that he could not have shown that the defendant had any prior

knowledge of the decedent's reputation or convictions; but he asserts admissibility upon the basis that the defendant was apprehensive of the decedent's family and that the convictions would have given credence to such apprehension.

The law is clear in Indiana on this issue as found in *McKee v. State,* (1926) 198 Ind. 590, 598, 154 N.E. 372, 375, where it was stated that:

"The defendant in homicide, where there is some evidence of self-defense, may prove specific acts of violence committed by the deceased upon third parties, knowledge of which has been communicated to the defendant prior to the homicide, for the purpose of showing the defendant's state of apprehension, and he ought to be allowed to prove every fact and circumstance known to him and connected with the deceased which was fairly calculated to create an apprehension of his own safety."

As there was no showing that the decedent's reputation had been communicated to the defendant prior to the shooting, although the defendant had testified that he knew of the decedent's family's reputation for violence, nevertheless, unless the specific incidents of the decedent's violence were known to the defendant, they could not have contributed to his alleged state of apprehension and hence had no relevance.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.