

FILED

Sep 20 2016, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christina Schermerhorn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 20, 2016

Court of Appeals Case No.
49A02-1510-CR-1643

Appeal from the Marion Superior
Court.
The Honorable Christina R.
Klineman, Judge.
Cause No. 49G17-1311-FD-73120

**Sharpnack, Senior Judge**

## Statement of the Case

[1] Christina Schermerhorn appeals her convictions of criminal recklessness, a Class A misdemeanor,[1] and domestic battery, a Class A misdemeanor.[2] We affirm.

## Issues

[2] Schermerhorn raises two issues, which we restate as:

    I.    Whether the trial court erred in refusing to admit Schermerhorn's proposed evidence; and

    II.   Whether the trial court abused its discretion in the course of instructing the jury.

## Facts and Procedural History

[3] Schermerhorn and her husband, Stanley, lived with their three young children in Marion County. On the morning of November 10, 2013, Stanley woke up because the children were crying. He found Schermerhorn doing the dishes. She appeared to be intoxicated, but when Stanley asked her about it, she denied drinking. Next, Stanley found a two-thirds empty bottle of vodka in the diaper box. Stanley showed it to Schermerhorn, and an argument ensued.

[4] As Stanley poured out the bottle in the sink, Schermerhorn hit him in the back of the head with her fist. He turned around, and Schermerhorn tried to hit him

---

[1] Ind. Code § 35-42-2-2 (2006).

[2] Ind. Code § 35-42-2-1 (2012).

several more times. Next, she picked up a knife and slashed him on the left arm. Schermerhorn dropped the knife, ran into the bathroom, and locked the door.

[5] The cut on Stanley's arm bled profusely. He went to the bathroom door to ask for help, but Schermerhorn cursed at him and refused to come out. Next, he called his mother, who called his sister-in-law to come look after the children. Stanley drove to the hospital after his sister-in-law arrived, and hospital staff reported his injury to the police.

[6] Officers were dispatched to the house to investigate the report. They arrived at 9:30 a.m., and Schermerhorn answered the door and allowed them to enter. Stanley's sister-in-law was not present. Schermerhorn was alone with the children and appeared to the officers to be intoxicated, exhibiting slurred speech and unsteady balance. In the kitchen, officers found blood on a knife and on the floor.

[7] One of the officers went to the hospital to interview Stanley, where he was being treated for a one to two inch long cut on his left arm. The officer returned to the house, and Schermerhorn was placed in custody. Later, the State charged Schermerhorn with criminal recklessness, a Class D felony; two counts of domestic battery, one as a Class D felony and the other as a Class A misdemeanor; and two counts of battery, one as a Class D felony and the other as a Class A misdemeanor.

[8]     Prior to trial, Schermerhorn asserted a defense under Indiana Code section 35-41-3-11 (1997), known as the "effects of battery statute." Schermerhorn also filed a notice of intent to offer evidence of alleged prior misconduct by Stanley, including: (1) many instances of physical, sexual, and emotional abuse of her, (2) an incident of physical abuse of his teenage son from a prior relationship, and (3) use of controlled substances. The State filed a response. After a hearing, the court determined Schermerhorn was entitled to introduce evidence pertaining to Stanley's alleged physical abuse of her on the night before the incident in question but rejected all of her other proposed evidence. The court later reconsidered its decision and ruled that Schermerhorn could present evidence as to any prior incidents of Stanley's alleged abuse against her, but Schermerhorn could not present to the jury evidence of Stanley's alleged physical abuse of his son or Stanley's alleged use of controlled substances.

[9]     At trial, Stanley testified as described above. By contrast, Schermerhorn testified that she was under the influence of alcohol and prescription medication that morning, and, as a result, she could not remember anything that happened after Stanley asked her if she had been drinking. Schermerhorn described for the jury several prior occasions when Stanley had physically, sexually, and emotionally abused her, including verbal and physical abuse on the night of November 9, 2013.

[10]    Outside the presence of the jury, Schermerhorn made an offer of proof as to an audio recording. According to Schermerhorn, who described the events presented in the recording as it played for the trial court, the recording captured

Stanley choking his teenage son in her presence in August 2011. The trial court did not allow Schermerhorn to present that evidence to the jury. The jury determined Schermerhorn was guilty of felony criminal recklessness, misdemeanor domestic battery, and misdemeanor battery, but not guilty of felony domestic battery and felony battery.

[11] The court imposed alternative misdemeanor sentencing for the criminal recklessness charge. In addition, the court dismissed the Class A misdemeanor battery verdict. As a result, the court entered a judgment of conviction and sentence for Class A misdemeanor criminal recklessness and Class A misdemeanor domestic battery. This appeal followed.

# Discussion and Decision

## A. Schermerhorn's Recording

[12] Schermerhorn argues the trial court should have allowed her to present to the jury the August 2011 audio recording of Stanley choking his teenage son in her presence, along with her testimony about the incident. She further contends the court's error deprived her of her right to present a defense under the federal and state constitutions. The State responds that Schermerhorn's evidence was inadmissible under Indiana's Rules of Evidence and, as a result, her constitutional rights were not violated.

[13] In general, a trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only where it is shown that the court abused its discretion. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011).

Where, as here, an evidentiary claim raises constitutional issues, our standard of review is de novo. *Jones v. State*, 982 N.E.2d 417, 421 (Ind. Ct. App. 2013), *trans. denied*.

[14] Schermerhorn argues the trial court's exclusion of her evidence violated her right to present a defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[3] The constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532, 81 L. Ed. 2d 413 (1984)). An essential component of procedural fairness is an opportunity to be heard. *Id.* at 2146-47.

[15] Nevertheless, the right to present a defense is not absolute. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 653, 98 L. Ed. 2d 798 (1988). Thus, both a defendant and the prosecutor "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973). In Indiana, evidence must

---

[3] She also argues the trial court's decision violated her right to present a defense under Article one, sections twelve and thirteen of the Indiana Constitution, but she does not present a separate analysis or citations to authority specific to her state constitutional claims. As a result, those claims are waived. *See Wilkins v. State*, 946 N.E.2d 1144, 1147 (Ind. 2011) (failure to provide separate state constitutional analysis results in waiver).

be relevant to be admissible. Ind. Evid. Rule 402. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Ind. Evid. Rule 401.

[16] We must consider Schermerhorn's proposed evidence in the context of the claim she presented at trial. She asserted she was not criminally liable for her attack on Stanley pursuant to the "effects of battery" statute, Indiana Code section 35-41-3-11. That statute provides, in relevant part:

> (b) This section applies under the following circumstances when the defendant in a prosecution raises the issue that the defendant was at the time of the alleged crime suffering from the effects of battery as a result of the past course of conduct of the individual who is the victim of the alleged crime:
>
> * * * * *
>
> (2) The defendant claims to have used justifiable reasonable force under section 2 of this chapter. The defendant has the burden of going forward to produce evidence from which a trier of fact could find support for the reasonableness of the defendant's belief in the imminence of the use of unlawful force or, when deadly force is employed, the imminence of serious bodily injury to the defendant or a third person or the commission of a forcible felony.

*Id.*

[17] "Effects of battery" is defined, in relevant part, as "a psychological condition of an individual who has suffered repeated physical or sexual abuse inflicted by another individual who is the . . . victim of an alleged crime for which the abused individual is charged in a pending prosecution; and . . . abused

individual's . . . spouse or former spouse." Ind. Code § 35-31.5-2-109 (2012). Furthermore, Indiana Code section 35-41-3-11(b)(2) refers to "section 2 of this chapter," which is the statute that governs claims of self defense. That statute provides, in relevant part: "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Indiana Code section 35-41-3-2(c) (2013).

[18] Thus, a defense under Indiana Code section 35-41-3-11(b)(2) is a particular form of self defense in which the reasonableness of the belief of the defendant that the victim's use of unlawful force against the defendant was imminent is affected by "the effects of battery." The defendant has the burden of producing evidence to support the reasonableness of the defendant's belief that use of unlawful force by the victim was imminent.

[19] The parties dispute whether the recording of Stanley purportedly choking his teenage son in Schermerhorn's presence, as interpreted by Schermerhorn's testimony, is relevant to Schermerhorn's defense. To be clear, the parties agree that, as a general rule, evidence that a victim battered a third party can be relevant to demonstrate the defendant's reasonable fear of the victim for purposes of self defense. The parties disagree as to whether a victim's use of force against a third party is relevant when a defendant raises a claim under the effects of battery statute. This is an issue of first impression.

[20] Schermerhorn cites several cases to argue that the recording was relevant to her effects of battery defense, but those cases involve general self defense rather than an effects of battery defense. *See Littler v. State*, 871 N.E.2d 276 (Ind. 2007); *Russell v. State*, 577 N.E.2d 567 (Ind. 1991); *Holder v. State*, 571 N.E.2d 1250 (Ind. 1991); *Brand v. State*, 766 N.E.2d 772 (Ind. Ct. App. 2002), *trans. denied*.

[21] We are left with the plain language of the governing statutes. Indiana Code section 35-41-3-11 requires the defendant to produce evidence that he or she was "suffering from the effects of battery as a result of the past course of conduct" of the victim. Pursuant to Indiana Code section 35-31.5-2-109, the "past course of conduct" is limited to "repeated physical or sexual abuse" of the defendant by the victim. The statutes do not address acts by the victim against third parties in the defendant's presence.

[22] Based on the statutory language, we cannot conclude that the recording of Stanley purportedly choking his teenage son two years before the crimes at issue was relevant to Schermerhorn's effects of battery defense. The proposed evidence was irrelevant pursuant to Indiana Evidence Rule 401 and thus inadmissible under Indiana Evidence Rule 402. Schermerhorn's right to present a defense does not include the right to admit evidence that fails to

comply with Indiana's evidentiary rules, and as a result the trial court did not violate her constitutional rights by excluding the recording.[4]

[23] In any event, even if the recording should have been admitted, the error was harmless. An error in the exclusion of evidence is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights. *Barnhart v. State*, 15 N.E.3d 138, 143 (Ind. Ct. App. 2014). Here, Schermerhorn testified about four incidents where Stanley hit her or otherwise physically abused her over the course of their marriage, including an incident on the night before the crimes at issue. She presented to the jury photographs of facial injuries from one of the incidents. In addition, Schermerhorn told the jury about two occasions where Stanley had punched a door or wall in her presence during an argument. She also testified that Stanley coerced her into sexual activity on an almost daily basis and raped her twice in the summer of 2013. Finally, a clinical psychologist who treated Schermerhorn noted that she exhibited many of the characteristics of victims of domestic violence, including the use of denial as a coping mechanism for emotional turmoil, very low self esteem, emotional dependency on others, and learned helplessness in the face of stress. Based on this evidence that Schermerhorn offered in support of her effects of battery defense, the trial court's exclusion of a recording of Stanley allegedly choking

---

[4] The State argues the recording was also inadmissible pursuant to Indiana Evidence Rule 403. We need not address this claim.

his teenage child two years prior to the crimes at issue here was sufficiently minor so as not to affect Schermerhorn's right to present a defense.

## B. Jury Instructions

[24] Schermerhorn argues the trial court should have given her proposed jury instructions on the effects of battery. The State claims in response that the court's instructions correctly stated the law.

[25] Instructing a jury is left to the sound discretion of the trial court and we review its decision only for an abuse of discretion. *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013). When the court refuses a tendered jury instruction, we undertake a three-part analysis in determining whether a trial court has abused its discretion. *Id.* Specifically, we consider: (1) whether the tendered instruction is a correct statement of the law; (2) whether there was evidence to support the tendered instruction; and (3) whether the substance of the tendered instruction was covered by another instruction or instructions. *Id.* at 345-46. Preliminary and final instructions are considered as a whole, not in isolation. *Price v. State*, 765 N.E.2d 1245, 1252 (Ind. 2002). We will reverse only when the jury instructions, considered in their entirety, misstate the law or otherwise mislead the jury.[5] *Id.*

---

[5] Schermerhorn argues in passing that the trial court's refusal to give her tendered instructions "deprived [her] of the due process and fair trial to which she was entitled under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One, Sections 12 and 13 of the Indiana Constitution." Appellant's Br. pp. 27-28. Schermerhorn cites to no authorities in support of any of her

The trial court's instructions on self defense and effects of battery were as follows:

> Final Instruction No. 6
>
> It is an issue whether the Defendant acted in self-defense. A person may use reasonable force against another person to protect himself from what the Defendant reasonably believes to be the imminent use of unlawful force. However, a person may not use force if:
>
> he/she is committing a crime that is directly and immediately connected to the confrontation
>
> (or)
>
> he/she is escaping after the commission of a crime that is directly and immediately connected to the confrontation
>
> (or)
>
> he/she provokes a fight with another person with intent to cause bodily injury to that person
>
> (or)
>
> he/she has willingly entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person continues or threatens to continue the fight) [sic].
>
> The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.
>
> Final Instruction No. 7

---

constitutional claims and offers no constitutional analysis, unlike in her discussion of her claim that the trial court should have admitted her recording. In the absence of any discussion or citation to authority, the claims are waived. *See Sandleben v. State*, 29 N.E.3d 126, 132 (Ind. Ct. App. 2015) (federal constitutional claims waived due to failure to provide argument), *trans. denied*.

> The defendant has raised the issue that the defendant was at the time of the alleged crime suffering from the effects of battery as a result of the past course of conduct of the individual who is the victim of the alleged crime.
>
> The defendant claims to have used justifiable reasonable force. The defendant has the burden of producing evidence from which a reasonable trier of fact could find support for the reasonableness of the defendant's belief in the imminence of the use of unlawful force or, when deadly force is employed, the imminence of serious bodily injury to the defendant or a third person or the commission of a forcible felony.

Appellant's App. pp. 237-38. Final Instruction 6 was based on a pattern jury instruction. The trial court told the parties that it did not find a pattern jury instruction on the effects of battery defense, so the court used the statutory language to draft Final Instruction 7.

[27] Schermerhorn offered a number of proposed jury instructions, including the following on the effects of battery defense:

> Battered Person Syndrome – Sensitivity
>
> A person who suffers from the effects of battery, or battered person syndrome, has a greater sensitivity to danger than does the ordinary person. As a result, a person who suffers from battered person syndrome is justified in acting more quickly and taking harsher measures for her protection in the event of assault, either actual or threatened, than would a person who is not subject to battered person syndrome.
>
> Evidence has been received in this case that the accused suffers from battered person syndrome and has a greater sensitivity to danger. If you believe that the accused has a greater sensitivity to danger and, because of such sensitivity, had reasonable cause to fear greater peril in the event of an altercation with alleged

victim, you are to consider such sensitivity in determining whether the accused acted reasonably in protecting her life or bodily safety.

Appearance of Danger – Effects of Battery

The effects of battery, or battered spouse syndrome, applies where an accused raises the issue that the accused at the time of the alleged crime, was suffering from the effects of battery as a result of the past course of conduct of the individual who is the injured person of the alleged crime.

If you find from the evidence that the accused suffers from battered person syndrome or the effects of battery, you may consider that evidence in connection with the accused's claim of self-defense. Such evidence relates to the issue of the reasonableness of the accused's belief that the use of force was immediately necessary, even though no use of force against the accused may have been, in fact, imminent. The standard is whether the circumstances were such as would excite the fears of a reasonable person possessing the same or similar psychological and physical characteristics of the accused and faced with the same circumstances surrounding the accused at the time the accused used force.

[28] Appellant's App. pp. 190, 192. The trial court effectively rejected both instructions.

[29] Schermerhorn argues Final Instructions 6 and 7 were erroneous as a matter of law. Specifically, she claims Final Instruction 6 should have instructed the jury to consider from her subjective standpoint whether she had a reasonable belief that the use of unlawful force against her was imminent.

[30] Schermerhorn is correct that a claim of self defense has both subjective and objective components, as follows: (1) a defendant must have actually believed

that the use of force was necessary to protect himself or herself; and (2) the belief must have been one that a reasonable person would have held under the circumstances. *Washington*, 997 N.E.2d at 349. In *Washington*, our Supreme Court determined the jury instruction on self defense in that case, which tracked the pattern jury instruction, sufficiently instructed the jury on both components. In this case, Final Instruction 6 is also based on the pattern jury instruction, and the final instruction's language tracks the instruction in *Washington* with respect to a defendant's reasonable belief in the imminent use of unlawful force. *See id.* at 345. Final Instruction 6 adequately defines a reasonable belief and is not erroneous.

[31] Schermerhorn further argues Final Instructions 6 and 7 were inadequate because they did not inform the jury that the "effects of battery is part of self-defense" and did not sufficiently address the "interplay" between the two concepts. Appellant's Br. pp. 29-30. She thus claims the court should have also given her instructions on the effects of battery to sufficiently explain her defense to the jury. We disagree. We are obligated to read Final Instructions 6 and 7 together. They address the same concepts, specifically the use of reasonable force in self defense and the reasonableness of a defendant's belief that the use of unlawful force was imminent, using the same language. The plain language of the instructions establishes that the concepts of self defense and the effects of battery are related. As a result, the final instructions adequately covered the substance of the legal issues, and Schermerhorn's proposed instructions were unnecessary.

[32] Finally, Schermerhorn claims Final Instruction 7 misstated the law because it told the jurors that she bore the burden of producing evidence to establish the reasonableness of her belief that the use of unlawful force against her was imminent. She concedes the instruction tracks the language of the governing statute, Indiana Code section 35-41-3-11, but she claims the jury could have confused the burden of producing evidence with the overall burden of proof as to her defense of the effects of battery, which rested with the State.

[33] We disagree. We have already determined Final Instructions 6 and 7, read together, adequately informed the jury of the relationship between self defense in general and the effects of battery defense. Final Instruction 6 instructed the jury that the State bears the "burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense." Appellant's App. p. 237. The instructions, read together, adequately informed the jury the State bore the ultimate burden of proof.[6] *See Marley v. State* 747 N.E.2d 1123, 1129 (Ind. 2001) (noting the effects of battery defense does not "impermissibly shift the burden of proof" to the defendant).

## Conclusion

[34] For the reasons stated above, we affirm the judgment of the trial court.

---

[6] The State argues Schermerhorn's proposed instructions on her effects of battery defense misstated the law. We need not address this claim.

Affirmed.

Baker, J., and Najam, J., concur.