## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2017, 6:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dennis Winfert,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 22, 2017

Court of Appeals Case No.
49A04-1706-CR-1422

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1602-F3-7567

**Najam, Judge.**

# Statement of the Case

Dennis Winfert appeals his conviction, following a jury trial, for sexual misconduct with a minor, as a Level 4 felony. Winfert raises two issues for our review, which we restate as follows:

1. Whether the trial court abused its discretion and violated Winfert's Fifth Amendment right to testify and his Sixth Amendment right to present a defense when it excluded a statement made by Winfert that a witness was not telling the truth.

2. Whether the trial court abused its discretion when it excluded extrinsic evidence of a witness' prior inconsistent statement.

We affirm.

# Facts and Procedural History

A.A. was born in January of 2002 to J.A. ("Mother"). In 2008, Winfert and Mother began a romantic relationship. In 2013, they began to live together with A.A. and Winfert's children. On February 17, 2016, Winfert came into A.A.'s room and pulled her pants down. Winfert "told [A.A.] to shut up and he put his hand on [her] mouth." Tr. at 12. Winfert then had sexual intercourse with A.A. After Winfert left her room, A.A. showered, changed her clothes, and threw the underwear and pajamas she had been wearing into the trash. The next day, A.A. told a counselor at her school what Winfert had done. The counselor called the Indiana Department of Children Services

("DCS"), and a DCS family case manager went to A.A.'s school to interview her.

[4] Thereafter, the DCS family case manager took A.A. to the Center of Hope at Riley Hospital for Children where pediatric nurse Barbara Mulvaney examined her. During the examination, Mulvaney observed an area of redness and swelling on A.A.'s labia minora, which, Mulvaney concluded, was indicative of possible trauma. Mulvaney then collected a total of eight internal and external genital swabs from A.A. Those items were submitted for DNA testing. On at least four of the swabs, the forensic scientist with the Indianapolis/Marion County Forensic Services Agency found two contributors of DNA, A.A. and another person, but there was an insufficient amount of DNA for additional DNA testing. The forensic scientist then performed YSTR testing, which looks for Y chromosomes, on all eight swabs. Those tests showed the presence of YSTR DNA in all eight samples. The forensic scientist then compared the YSTR DNA found in the samples to a sample of DNA that officers collected from Winfert. The YSTR DNA profile found in the samples was consistent with the YSTR DNA profile of Winfert. Based on this, "Winfert and all of his male patrilineal related relatives" could not be excluded as potential contributors of the sample. *Id.* at 186. Further, the forensic scientist estimated that one in 621 individuals would have the same YSTR DNA profile.

[5] On February 29, 2016, the State charged Winfert with rape, as a Level 3 felony; sexual misconduct with a minor, as a Level 4 felony; and battery, as a Class A misdemeanor. The trial court held a jury trial on May 22 and 23, 2017.

Mother testified during the State's case-in-chief. During his cross-examination of Mother, Winfert questioned her about A.A.'s behavioral problems at school. The following colloquy occurred:

Q.  Is it your understanding that A.A.[,] during this time period of February 17, 18, of 2016, was having some disciplinary problems at school?

A.  No.

Q.  Do you recall giving a statement at the child advocacy center on February the 18[th], of 2016? With Detective Nicolle Flynn present?

A.  Was that a lady detective?

Q.  Yes.

A.  Yes, I remember.

Q.  In fact she's sitting right here.

A.  Yes.

Q.  I would like to show you what you said on that day and let you read it. Page six.

A.  A.A. was never in trouble at school. She struggled with math but that was all. Yes, A.A. is bright. She does well in school. Is that all?

Q.      Did you say that—on that date that A.A. was in trouble and Dennis tried to help her when she failed eighth grade?  I think the interpreter was unsure of the word failed.

A.      No, that's not true.

* * *

A.      A.A. has never failed in school.  Never.

* * *

Q.      Do you recall being asked, did she get in trouble last night and answering, yes, she was smarting off, not doing well in school?

A.      I remember that day but I did not say that.  And I wasn't talking about the school situation.

Tr. at 69-70.

[6]     The State also called Detective Nicolle Flynn as a witness.  Winfert cross-examined her, and the following colloquy occurred:

Q.      Okay.  And . . . during your investigation you took a statement from . . . A.A.'s mother, correct?

A.      Yes.

Q.      And [Mother] told you that A.A. had been in trouble at school didn't she?

Tr. at 126. The State then objected to the statement on hearsay grounds. The court sustained the objection, struck the question, and instructed the jury to not consider the statement in any way.

[7] During Winfert's case-in-chief, Winfert testified. During his testimony, his attorney asked him why he had decided to testify. In response, Winfert stated, "I felt I should go ahead because [Mother] did not tell the truth about a lot things and I just wanted—." Tr. at 207. The State objected to the testimony, and the court sustained the objection.

[8] The jury found Winfert guilty of sexual misconduct with a minor, as a Level 4 felony, but acquitted him on the other two charges. The trial court entered judgment of conviction accordingly and sentenced Winfert to eight years, with five years executed in the Indiana Department of Correction, two years on home detention, and one year on sex-offender probation. This appeal ensued.

## Discussion and Decision

### Issue One: Winfert's Testimony

Winfert first claims that the trial court abused its discretion when it excluded his testimony that Mother had lied during her testimony, and he maintains that this exclusion violated his Fifth and Sixth Amendment rights. The Indiana Supreme Court has recently provided that when ruling on the admissibility of evidence when a constitutional violation is alleged, "'the proper standard of appellate review is de novo.'" *Ackerman v. State*, 51 N.E.3d 171, 177 (Ind. 2016) (quoting *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013)).

[9] Again, Winfert testified during his case-in-chief. During his testimony, his attorney asked him why he had decided to testify. In response, Winfert stated: "I felt I should go ahead because [Mother] did not tell the truth about a lot things and I just wanted—." Tr. at 207. The State objected and asserted that "[a]nother witness cannot testify as [to] the truthfulness of another witness." *Id*. The court sustained the objection and struck that portion of the testimony.

[10] Winfert asserts that he "was the defendant, not a witness, in this case and he had a Fifth Amendment right to testify and tell the jury that a witness against him lied about facts of which he had personal knowledge, as well as a Sixth Amendment right to present his defense." Appellant's Br. at 12. In other words, Winfert contends that Indiana Rule of Evidence 704(b) only applies to witnesses, and a defendant is not a "witness" for purposes of the rule. Winfert contends further that "[t]here is no evidentiary rule, including Rule 704, forbidding a defendant from testifying as to the truthfulness of a witness." *Id*. at 14. However, Winfert does not cite any legal authority to support his contentions on this issue.

[11] Indiana Rule of Evidence 704(b) states that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocent in a criminal case; the truth or falsity of allegations; *whether a witness has testified truthfully*; or legal conclusions." (Emphasis added.) And "'[n]o witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth.'" *Bradford v. State*, 960 N.E.2d 871, 875 (Ind. Ct. App. 2012) (quoting *Angleton v. State*, 686 N.E.2d 803, 812 (Ind. 1997)).

[12] A witness is defined as "someone who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit." Black's Law Dictionary 1838 (10th ed. 2014). It is undisputed that Winfert gave testimony under oath and in person during his trial. As such, Winfert was a witness. Because Winfert was a witness at his trial, Indiana Rule of Evidence 704(b) applies to his testimony. Further "'[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Schermerhorn v. State*, 61 N.E.3d 375, 379 (Ind. Ct. App. 2016) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)), *trans denied*. Because Indiana Rule of Evidence 704(b) applied to Winfert during his testimony, he was prohibited from testifying that Mother did not tell the truth during her testimony. The trial court did not violate Winfert's Fifth Amendment right to testify or his Sixth Amendment right to present a defense when it sustained the State's objection and struck his testimony that Mother had lied.

### Issue Two: Prior Inconsistent Statement

[13] Winfert next claims that the trial court abused its discretion when it excluded extrinsic evidence of Mother's prior inconsistent statement. We review a trial court's evidentiary rulings for an abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. Earl*, 33 N.E.3d 337, 340 (Ind. 2015). Again, during the State's case-in-chief Mother testified and Winfert cross-examined her. At one point, Winfert questioned Mother about A.A.'s behavioral problems at school. Specifically, Winfert asked Mother whether she had told Detective Flynn at the child

advocacy center that A.A. had been in trouble at school. Mother responded and stated that A.A. had never failed in school. Mother further stated that she remembered the conversation with Detective Flynn, but that she did not say A.A. had been in trouble at school and that she "wasn't talking about the school situation." Tr. at 70.

[14] During Detective Flynn's testimony, Winfert cross-examined her. Winfert asked Detective Flynn if Mother told her that A.A. had been in trouble at school. The State then objected to the statement on hearsay grounds. Winfert responded by asserting that it was a "[p]rior inconsistent statement of what [Mother] said on the stand." *Id*. The court sustained the objection, struck the question, and instructed the jury to not consider the statement in any way.

[15] Winfert contends that Detective Flynn's statement was admissible as a prior inconsistent statement under Indiana Evidence Rule 613. In support of his contention, Winfert cites *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010), where our Supreme Court stated that "Rule 613 allows the use of a prior inconsistent statement to impeach a witness, and when so used, the statement is not hearsay." *Id*.

[16] However, as the State points out and Winfert concedes, Winfert did not make an offer of proof to preserve this issue for our review. "It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony." *Dowdell v. State*, 720 N.E.2d 1146, 1150 (Ind. 1999). "An offer of proof allows the trial and appellate courts to determine the admissibility of the

testimony and the potential for prejudice if it is excluded." *Id*. Without an offer of proof as to how Detective Flynn would have answered Winfert's question, we cannot say on appeal that her answer mattered. Accordingly, the issue is waived. And, waiver notwithstanding, we are not persuaded that any answer Detective Flynn would have given would have had a probable impact on the outcome. *See* Ind. Appellate Rule 66(A).

[17] In conclusion, Winfert, the defendant, became a witness when he testified. As such, he was subject to Indiana Rule of Evidence 704. The trial court did not violate his Fifth Amendment right to testify or his Sixth Amendment right to present a defense when the trial court struck his testimony that Mother had lied during her testimony. Further, Winfert waived any error in the exclusion of Detective Flynn's testimony when he failed to make an offer of proof.

[18] Affirmed.

Kirsch, J., and Brown, J., concur.